[No. A134701. First Dist., Div. Two. Dec. 18, 2012.]

MICHAEL COMSTOCK, Cross-complainant and Appellant, v.
LISA ABER, Cross-defendant and Respondent.

COUNSEL

Anderies & Gomes, Shane Keith Anderies and Anne Leinfelder for Cross-complainant and Appellant.

Bonagofsky & Weiss, John Scott Bonagofsky, Elizabeth Weiss; California Anti-Slapp Project, Mark Allen Goldowitz, Paul Clifford and Ryan Metheny for Cross-defendant and Respondent.

OPINION

**RICHMAN, J.**—Plaintiff Lisa Aber sued her employer and two of its employees based on an alleged sexual assault by the employees. Defendant Michael Comstock, one of the employees, filed a cross-complaint against Aber, alleging claims for defamation and intentional infliction of emotional distress. Aber filed a special motion to strike the cross-complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16). The trial court granted the motion and dismissed the cross-complaint. Comstock appeals. We affirm.

## BACKGROUND

*The Complaint and Cross-complaint*

The litigation began with a complaint filed by Aber on August 31, 2010. It named three defendants: Wolters Kluwer United States (Kluwer), her employer, and Comstock and James Cioppa, two employees of Kluwer. The complaint alleged four causes of action: (1) sexual harassment; (2) failure to

investigate and prevent sexual harassment; (3) sexual battery; and (4) intentional infliction of emotional distress. The first cause of action was against all defendants; the second against Kluwer only; and the third and fourth against Comstock and Cioppa.

The complaint was based on events on the evening of June 5, 2010, at and after a business-related social gathering where, Aber essentially alleged, Cioppa, her supervisor and an officer at Kluwer, and Comstock, a fellow employee, tried to get her drunk and convince her to have sex with them, implying that her job would be secure if she did so. Aber alleged what occurred that evening in vivid detail, in 12 paragraphs to be exact.

On December 21, 2010, Kluwer filed its answer to the complaint, and on April 6, 2011, Cioppa filed his answer. Meanwhile, Comstock was not served with the complaint until May 7, 2011. On June 3, 2011, Comstock filed his answer and also a cross-complaint, the pleading that is the subject of this appeal.

Comstock's cross-complaint alleged two causes of action: (1) defamation and (2) intentional infliction of emotional distress. Both causes of action were alleged to arise out of the same "common allegations," which included the following:

Comstock first "denies any wrongdoing and denies all material allegations against him" in Aber's complaint. Then, Comstock went on to allege a version of events on June 5, 2010, that was in stark contrast to that alleged by Aber. It began with Aber e-mailing Comstock that she would "love to meet" Comstock and Cioppa on June 5; that they met and had one or more drinks at the One Market Restaurant; and then it alleged this:

"7. After leaving One Market Restaurant, COMSTOCK, ABER, and CIOPPA traveled in ABER's car to her apartment in the Marina District of San Francisco. ABER invited COMSTOCK and CIOPPA up to her apartment. ABER made drinks for all three of them.

"8. After spending some time in ABER's apartment, COMSTOCK, ABER and CIOPPA walked to the Tipsy Pig Restaurant on Chestnut Street near ABER's apartment.

"9. Toward the end of the evening, COMSTOCK, ABER and CIOPPA left the Tipsy Pig Restaurant and walked to a restaurant suggested by ABER to eat. When they had finished eating, COMSTOCK, ABER and CIOPPA got into a cab. The cab stopped first at ABER's apartment to drop her off, and

then continued to CIOPPA's apartment to drop off CIOPPA and COMSTOCK. COMSTOCK did not exit the cab when the cab stopped to drop off ABER at her apartment. COMSTOCK had fallen asleep in the cab before it reached ABER's apartment.

"10. During the evening of June 5, 2010, COMSTOCK and CIOPPA asked ABER if she wanted to have brunch with them the following day. COMSTOCK is informed and believes, and thereon alleges that on June 6, 2010, CIOPPA called ABER. On information and belief, COMSTOCK alleges ABER told CIOPPA she could not meet for brunch that day because she was hung over and sick. On information and belief, COMSTOCK alleges ABER told CIOPPA she had CIOPPA's and COMSTOCK's jackets in her apartment, and that she would bring them to work on Monday.

"11. On the morning of Monday, June 7, 2010, COMSTOCK was in CIOPPA's office in WOLTERS KLUWER San Francisco. ABER stopped by CIOPPA's office with CIOPPA's and COMSTOCK's jackets. ABER stated she was sorry she could not meet them for brunch on Sunday, but that she had been vomiting all day. COMSTOCK and CIOPPA asked ABER if she wanted to get coffee with them that morning. ABER accepted and went to get coffee with them.

"12. Later that morning, as COMSTOCK was returning from a meeting outside the WOLTERS KLUWER office, he saw ABER near the reception desk of the office. ABER approached COMSTOCK and asked if something was wrong. COMSTOCK replied that nothing was wrong. ABER responded that she could tell that something was wrong. ABER responded by reaching out and touching COMSTOCK on the arm and elbow and stating, 'Michael, I'm so sorry.' COMSTOCK did not speak to ABER again.

"13. COMSTOCK is informed and believes, and thereon alleges that on the afternoon of Wednesday, June 9, 2010, ABER asked CIOPPA if he and COMSTOCK wanted to go out after work. COMSTOCK is informed and believes, and thereon alleges that CIOPPA declined the invitation.

"14. COMSTOCK is informed and believes, and thereon alleges that ABER thereafter orally published false statements about COMSTOCK to third parties, including but not limited to friends, employees of WOLTERS KLUWER, health care practitioners, and the police. These false statements included the fabricated story that COMSTOCK had sexually assaulted ABER on the night of June 5, 2010.

"15. COMSTOCK is informed and believes, and thereon alleges that ABER made these statements clearly identifying COMSTOCK as the alleged assailant in an effort to damage his reputation.

"16. COMSTOCK is informed and believes, and thereon alleges ABER reported to a nurse at Kaiser Permanente in or around June 2010 that she had been sexually assaulted. On information and belief, COMSTOCK alleges ABER provided the nurse with COMSTOCK's name and place of employment. On information and belief, COMSTOCK alleges the nurse then told ABER the nurse must report the sexual assault to the police. On information and belief, COMSTOCK alleges the nurse then called the police and asked ABER to repeat her story to the police.

"17. COMSTOCK is informed and believes, and thereon alleges that ABER reported the allegations of sexual assault against COMSTOCK to ERIN BUSH, Human Resources, at WOLTERS KLUWER in or around late June 2010.[1]

"18. COMSTOCK is informed and believes, and thereon alleges that ABER knew the falsity of her statements when she made them. ABER acted with malice, fraud, and oppression."

*The Motion to Strike*

On July 8, 2011, Aber filed a special motion to strike the cross-complaint under Code of Civil Procedure section 425.16 (SLAPP or anti-SLAPP motion).[2] The SLAPP motion was supported by a lengthy memorandum of points and authorities and a declaration of one of Aber's attorneys, which attached eight exhibits, most of which were claimed to be excerpts from the Web site of the United States Equal Opportunity Commission dealing with the subject of sexual harassment in employment.

On July 26, 2011, Comstock filed his opposition to the SLAPP motion. It included a memorandum of points and authorities and three declarations, of Comstock's attorneys Shane Anderies and Anne Leinfelder, and of Comstock himself. Comstock's opposition also included a request for judicial notice, seeking notice of a description of a case handled by Comstock's attorney Anderies.

The Anderies declaration attached numerous pages from Aber's deposition and what were claimed to be copies of telephone records and the notes of Kluwer human resources manager Erin Bush. The Leinfelder declaration

---

[1] Aber had been deposed on March 10, 2011, before Comstock was even served with the complaint, and Comstock had the deposition transcript for use in preparing his cross-complaint.

[2] All subsequent statutory references are to the Code of Civil Procedure unless otherwise stated.

testified essentially only to her hourly billing rate. Comstock's declaration was a total of seven paragraphs, and provided in its entirety as follows:

"1. I am a party Defendant in the above-entitled action. I make this declaration based on personal knowledge. If called to do so, I could and would testify truthfully about the matters stated herein.

"2. I know Plaintiff Lisa Aber from working at Wolters Kluwer.

"3. On or about August 6, 2010, I received an email from Defendant James Cioppa (Cioppa) stating that one of Cioppa's employees told Cioppa that Aber was telling employees at Wolters Kluwer that she got me fired and that there was 'an ongoing investigation going on because of things [I] did.' Cioppa ended his email with, 'Sorry to forward this type of message to you; however I do believe you have a right to know that someone is making negative statements about your character.' A true and correct copy of this August 6, 2010 email is attached hereto as Exhibit A.

"4. On or about May 7, 2011, I was served with Plaintiff and Cross-Defendant Lisa Aber's Complaint for sexual harassment, sexual battery and intentional infliction of emotional distress.

"5. I did not attend Aber's deposition on March 10, 2011 because I had not yet been served in the action. I did not have the opportunity to examine Aber at this deposition.

"6. After I was served with the Complaint, I began to receive discovery previously propounded and responded to in the action, including the deposition transcript of Aber's testimony, documents produced by Aber, documents produced by Wolters Kluwer, and documents subpoenaed from Aber's physicians and therapists.

"7. I learned from Aber's deposition testimony and documents produced by Aber and Wolters Kluwer that Aber had made false statements about me to third parties, including a nurse at Kaiser Hospital, possible [sic] the police, Wolters Kluwer's Senior Human Resources Manager, Erin Bush, and Aber's friends and other Wolters Kluwer employees."

On August 1, 2011, Aber filed her reply. It included a memorandum of points and authorities; a declaration of her attorney, John Scott Bonagofsky; and evidentiary objections to portions of the Comstock and Anderies declarations. Aber also filed opposition to the request for judicial notice.

The motion was scheduled for hearing for August 8. It came on as scheduled, and the trial court granted it that day. However, Comstock's

counsel was not present[3] and, as Comstock's brief describes it, "Comstock's counsel objected to the proposed order submitted by Aber's counsel based on his inability to present oral argument at the August 8 hearing because of the scheduling error. The trial court subsequently ordered a rehearing of the matter on December 6, 2011."

The motion was heard again on December 6, 2011, and following a hearing[4] the court entered the following order:

**"ORDER GRANTING CROSS-DEFENDANT LISA ABER'S SPECIAL MOTION TO STRIKE THE CROSS-COMPLAINT AS A MERITLESS SLAPP (C.C.P. § 425.16)**

"On August 8, 2011, cross-defendant Lisa Aber's special motion to strike Michael Comstock's cross-complaint came before by [*sic*] this Court. This Court considered the papers submitted by both parties and ordered that: said cross-defendant's special motion to strike pursuant to C.C.P. § 425.16 be granted, the Cross-Complaint of Michael Comstock be struck in its entirety and dismissed with prejudice, and that Cross-defendant Lisa Aber is entitled to an award of her attorneys' fees and costs pursuant to C.C.P. § 425.16, subdivision (c).

"This Court subsequently ordered a rehearing of the matter. On December 6, 2011, said rehearing was held. This Court considered the papers submitted by both parties and the arguments present[ed] at said rehearing.

"IT IS HEREBY ORDERED that said cross-defendant's special motion to strike pursuant to C.C.P. § 425.16 is hereby granted. The Cross-Complaint of Michael Comstock is stricken in its entirety and dismissed with prejudice. Cross-defendant Lisa Aber is entitled to an award of her attorneys' fees and costs pursuant to C.C.P. § 425.16, subdivision (c)."

Comstock filed a timely notice of appeal.

## DISCUSSION

*SLAPP Law and the Standard of Review*

We recently described the SLAPP law and its operation in *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463–464 [137 Cal.Rptr.3d 455] (*Hecimovich*):

---

[3] Comstock represents that his counsel "was not present at the hearing due to a scheduling error by the Court [as] [t]he Court had previously rescheduled the hearing for a later date."

[4] Comstock has elected to proceed without a reporter's transcript, so what occurred at the hearing is not before us.

■ "Subdivision (b)(1) of section 425.16 provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) of section 425.16 elaborates [on] the four types of acts within the ambit of a SLAPP, including[ (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or] '(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'

■ "A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant [(here, cross-defendant)] has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff [(here, cross-complainant)] has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)[5]

" 'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].)

---

[5] Subdivision (h) of section 425.16 provides that, "For purposes of this section, 'complaint' includes 'cross-complaint' [and] 'plaintiff' includes 'cross-complainant' . . . ."

"Finally, and as subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.'

"With these principles in mind, we turn to a review of the issues before us, a review that is de novo. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988 [119 Cal.Rptr.3d 835] (*Grewal*).)"

### Analysis of the Cross-complaint

As quoted above, Comstock's two causes of action are based on the fundamental allegations that Aber published false statements about him to others, specifically as follows: Aber "orally published false statements about COMSTOCK to third parties, including but not limited to friends, employees of WOLTERS KLUWER, health care practitioners, and the police. These false statements included the fabricated story that COMSTOCK had sexually assaulted ABER on the night of June 5, 2010"; "ABER reported to a nurse at Kaiser Permanente in or around June 2010 that she had been sexually assaulted. . . . Aber provided the nurse with COMSTOCK's name and place of employment. . . . [T]he nurse then told ABER the nurse must report the sexual assault to the police. . . . [T]he nurse then called the police and asked ABER to repeat her story to the police." Finally, Aber is alleged to have reported the claimed sexual assault to "ERIN BUSH, Human Resources, at WOLTERS KLUWER in or around late June 2010."

In short, Comstock alleges statements to four persons or groups of persons: (1) the police; (2) health care practitioners, specifically the nurse at Kaiser Permanente; (3) employees of Kluwer, including specifically Erin Bush; and (4) "friends."

### Comstock's Cross-complaint Is Within the SLAPP Statute

Aber contends that Comstock's cross-complaint is within the SLAPP statute on two separate bases. The first is under section 425.16, subdivision (e)(1) and (2), as statements made in, or in connection with matters under review by, an official proceeding or body. The second is under section 425.16, subdivision (e)(4), as statements made in connection with an issue of public interest. We agree with Aber's first contention. We need not reach the second.

### Statements to the Police

The law is that communications to the police are within SLAPP. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1439 [114 Cal.Rptr.2d 69] [complaint to police is "made in connection with an official proceeding

authorized by law"]; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1511 [65 Cal.Rptr.3d 641] [in action by physical therapist against client alleging false report of child abuse, client's "statements to the police clearly arose from protected activity . . ."]; see generally *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 [113 Cal.Rptr.2d 625] [filing complaint with a government agency constitutes a "statement before an official proceeding" within § 425.16, subd. (e)(1)]; *Lee v. Fick* (2005) 135 Cal.App.4th 89, 97 [37 Cal.Rptr.3d 375] [complaint to the government is itself "part of the official proceedings"].)

Comstock now admits that filing a report with the police is within section 425.16, subdivision (e)(1) and (2).[6] However, he argues that "Aber never complained to the police and provided no evidence that the nurse with whom she spoke filed a report or that the police subsequently investigated the complaint." And, so the argument runs, there was no protected conduct.

An anti-SLAPP motion is brought against a "cause of action" or "claim" alleged to arise from protected activity. (See § 425.16, subds. (b)(1), (3) & (c)(2).) The question is what is pled—not what is proven. The observations by our colleagues in Division Five make the point. As they recently put it in *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1548 [110 Cal.Rptr.3d 129]: "Smith's *purported* oral statements . . . constitute statements made in connection with an issue under consideration by a judicial body [citation]. [Citation.] The *alleged* activity therefore falls within the scope of the SLAPP statute." (Italics added.) Or earlier, in *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1004 [85 Cal.Rptr.3d 880]: "[B]y demonstrating that . . . *alleged* statements were in connection with an issue under consideration by the district attorney, respondents made a prima facie showing that the acts underlying Schaffer's causes of action are within the ambit of the anti-SLAPP statute." (Italics added.)

In short, it is Comstock's allegation that Aber complained to the police that brings his cross-complaint within the SLAPP statute. Comstock cannot defeat that allegation by claiming that Aber did not do what he *alleges* she did.[7]

---

[6] Comstock argued below that false police reports are not protected under the anti-SLAPP statute. He does not raise that argument here, and we deem it waived. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 [43 Cal.Rptr.3d 148].)

[7] Comstock's argument may in any event be factually inaccurate. Aber's deposition testimony showed that after she gave the Kaiser nurse the details of the assault, the nurse said that she (the nurse) had to report the assault to the police, and at that point got the police on the line. Aber was on hold for some five to 10 minutes, while the nurse presumably spoke with the police. The officer then asked Aber to go over what she had told the nurse, and Aber asked if she could call the officer back, because she was not feeling well. It would thus appear that

### The Statement to the Kaiser Nurse

Relying on *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1579 [31 Cal.Rptr.3d 368] (*Siam*), Aber argued that her statements to the Kaiser nurse were within SLAPP, as statements made to a mandated reporter and thus within section 425.16, subdivision (e)(2).[8] Comstock argued below that the nurse was not a mandated reporter, a position he has abandoned here. He now argues that *Siam* is distinguishable, as (1) it involved a different reporting statute and (2) official proceedings had already begun at the time the statements were made. We are not persuaded.

While it is true that *Siam* involved a different Penal Code section—11172 rather than 11160, applicable here—we fail to see the significance. Both statutes mandate reports to the government; both provide immunity for reporters. It would thus appear that the Legislature intended that information about potential criminal conduct be provided to law enforcement, for it to determine what action, if any, to take. Put otherwise, it would appear that the Legislature intended that reporting of information to a mandatory reporter result in a governmental investigation—an "official proceeding"—even when the victim does not directly report to the law enforcement agency.

As the court put it in *Siam*, involving child abuse, the causes of action were "based upon defendant's reports of child abuse to 'people who were legally required to report any child abuse allegations . . . in an attempt to manufacture corroboration' for his own false allegations. That is, the statements were designed to prompt action by law enforcement or child welfare agencies. Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109–1110 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *ComputerXpress, Inc. v. Jackson*[, *supra*,] 93 Cal.App.4th [at p.] 1009 . . . .) Thus, defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the

Aber did speak with the police, however briefly, and that the officer was apparently conducting an investigation during this conversation.

[8] Penal Code section 11160, subdivision (a) provides as follows: "Any health practitioner . . . who, in his or her professional capacity or within the scope of his or her employment, provides medical services for a physical condition to a patient whom he or she knows or reasonably suspects is a person described as follows, shall immediately make a report in accordance with subdivision (b): [¶] . . . [¶] (2) Any person suffering from any wound or other physical injury inflicted upon the person where the injury is the result of assaultive or abusive conduct."

"Assaultive or abusive conduct" includes battery, sexual battery, rape, or an attempt to commit any of said crimes. (Pen. Code, § 11160, subd. (d)(8), (9), (14), and (24).)

authorities are protected by the statute. (§ 425.16, subd. (e)(2).)" (*Siam, supra,* 130 Cal.App.4th at pp. 1569–1570.)

As quoted above, section 425.16 must be "construed broadly." And we construe it to hold that Aber's statements to the Kaiser nurse—who was required to, and did, report it to law enforcement—is protected activity under section 425.16.

### The Statements to Bush

Aber argued that her statements to Bush, the Kluwer HR manager, are protected under section 425.16, subdivision (e)(1) and (2), as statements prior to litigation or other official proceedings. Her theory was that the statements were necessary to address a commonly used affirmative defense by an employer in a sexual harassment case—a defense, not incidentally, that Kluwer has in fact asserted against Aber here.[9] We agree.

The defense is that set forth in *Faragher v. City of Boca Raton* (1998) 524 U.S. 775 [141 L.Ed.2d 662, 118 S.Ct. 2275], which held that in an action by an employee, the employer can assert as an affirmative defense that the employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer. (See *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1038–1039 [6 Cal.Rptr.3d 441, 79 P.3d 556] [analyzing the defense].)

*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1115, on which Aber relies, is persuasive. There, the Supreme Court held that " '[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' " Thus, the court held that some of the allegedly defamatory statements protected by section 425.16 were in connection with a *potential* complaint to HUD and a *potential* small claims case, neither of which had been filed. (*Briggs v. Eden Council for Hope & Opportunity, supra,* at pp. 1109–1110, 1114–1115.) Other cases are to the same effect, holding that actions based on prelitigation statements or writings may be within the SLAPP statute. (See, e.g., *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 [73 Cal.Rptr.3d 383] [letter to employer's customers accusing ex-employee of misappropriation of trade secrets and threatening to file litigation]; *CKE Restaurants, Inc. v. Moore*

---

[9] Kluwer's fifth affirmative defense alleged that "Plaintiff [Aber] unreasonably failed to take advantage of the preventative and corrective opportunities provided by it or otherwise to avoid harm, and that reasonable use of Wolters Kluwer's internal procedures and remedies would have prevented some, if not all, of Plaintiff's claimed damages from occurring."

(2008) 159 Cal.App.4th 262, 271 [70 Cal.Rptr.3d 921] [statements made in 60-day notice of intent to sue required by Prop. 65]; *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887–888 [123 Cal.Rptr.3d 736] [letter to film distributors asserting that film was not authorized and threatening to sue].)

Comstock's response is to say that reliance on *Briggs* is "misplaced," and that Aber's argument "completely ignores, or at least disregards, *Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501 [38 Cal.Rptr.3d 467], which is precisely on point." *Olaes* is not on point, let alone precisely.

In *Olaes* a former employee sued his former employer for defamation, alleging that the company falsely accused him of sexual harassment and failed to adequately investigate prior to terminating him. The company filed a SLAPP motion, which the trial court denied. The Court of Appeal affirmed, but not on any basis availing to Comstock. There, the court noted, it was the "clause, 'any other official proceeding authorized by law,' that forms the heart of this dispute." (*Olaes v. Nationwide Mutual Ins. Co., supra*, 135 Cal.App.4th at p. 1505 (*Olaes*).) And, the court went on to conclude, the employer's sexual harassment procedure was not within the ambit of section 425.16. The fact that the company's personnel department was charged with implementing an antiharassment policy and established procedures mimicking those of a governmental agency did not transform it into an administrative body. The company possessed neither the powers nor the responsibilities of a government agency and its human resources specialist was not an administrative body possessing quasi-judicial powers. (*Olaes, supra*, at pp. 1508–1509.)

In short, the employer's argument in *Olaes* was that the investigation of a harassment claim was an official proceeding authorized by law, and therefore the claims against it were subject to section 425.16, subdivision (e)(1) and (2). (*Olaes, supra*, 135 Cal.App.4th at pp. 1505–1508.) That is not Aber's argument here, which is that her statements to Bush were protected because they were statements prior to litigation, necessary to defeat an affirmative defense that Kluwer could—indeed, did—assert in her lawsuit. That argument was not raised or considered in *Olaes*.

*The Alleged Statements to Friends*

 As quoted above, Comstock's cross-complaint alleged that Aber made statements to "friends," a generic allegation unsupported by any specific detail—not as to what was said, not as to whom. The issue then becomes what is the significance of that *allegation* vis-à-vis a SLAPP analysis. We conclude it needs to be addressed under the mixed cause of action analysis,

which generally holds that the anti-SLAPP law will apply to a cause of action based on both activity that is protected by the SLAPP statute and activity that is not.

Our colleagues in Division Three have weighed in on the point: a " 'cause of action will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31].) Likewise, Division Five wrote: "A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity."[10] (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287 [74 Cal.Rptr.3d 873].) These holdings reflect the fundamental concept that a "plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of 'one cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906].)

Applying that rule here leads to the conclusion that Comstock's causes of actions are within SLAPP, as the only allegation that is "incidental" is the vague allegation about "friends." Or, to state it conversely, the essence of the defamation claims are the specific allegations about what Aber said to the Kaiser nurse and to Bush. It is the generic allegations that are "incidental."

Arguing to the contrary, Comstock cites the recent case of *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 772 [142 Cal.Rptr.3d 74] where, Comstock asserts, the Court of Appeal dealt with a similar situation. Thus Comstock quotes: " 'Given the foregoing analysis, we are confronted with the following situation: What should be the result of an anti-SLAPP motion when a combined, or mixed, cause of action includes one allegation of *unprotected* activity, in which the cross-complainant *has* established a probability of prevailing, and a second allegation of *protected* activity, in which the cross-complainant *has not* established a probability of prevailing. We conclude the lawsuit-related allegations may be parsed from the causes of action and stricken, while the allegations related to non-protected activity may remain as part of the complaint.' "

---

[10] Division Five went so far as to hold that two causes of action were subject to SLAPP where protected activity was contained in only two out of 16 allegations of breaches of fiduciary duty, explaining that they were not " 'merely incidental' " because "they are still acts for which [plaintiff] asserts liability and seeks damages" and those allegations "provide an independent basis for liability." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, supra,* 184 Cal.App.4th at pp. 1552–1553.)

Assuming we would agree with the majority opinion in this two-to-one opinion—a question we do not answer—we find the language on which Comstock relies distinguishable: unlike the plaintiff in *Singletary*, Comstock has not "established" a probability of prevailing on anything.

We thus conclude Aber has met the threshold showing under step 1 of the SLAPP analysis, demonstrating that the allegations in Comstock's cross-complaint are within the SLAPP law as within section 425.16, subdivision (e)(1) and (2).[11] That brings us to step 2, whether Comstock has shown a probability of prevailing on his claims.

## Comstock Has Failed to Demonstrate a Likelihood of Prevailing on the Merits

### *Introduction to Analysis*

We confirmed the applicable law in *Grewal v. Jammu, supra,* 191 Cal.App.4th at pages 989–990: "We decide the second step of the anti-SLAPP analysis on consideration of 'the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).) Looking at those affidavits, '[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.' (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700 [61 Cal.Rptr.3d 29].) [¶] That is the setting in which we determine whether plaintiff has met the required showing, a showing that is 'not high.' (*Overstock.com, Inc. v. Gradient Analytics, Inc., supra,* 151 Cal.App.4th at p. 699.) In the words of the Supreme Court, plaintiff needs to show only a 'minimum level of legal sufficiency and triability.' (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5 [97 Cal.Rptr.2d 179, 2 P.3d 27].) In the words of other courts, plaintiff needs to show only a case of 'minimal merit.' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*[, *supra,*] 133 Cal.App.4th [at p.] 675 . . . , quoting *Navellier v. Sletten*[, *supra,*] 29 Cal.4th 82, 95, fn. 11 . . . .)

". . . [T]he anti-SLAPP statute operates like a 'motion for summary judgment in "reverse." ' (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719 [34 Cal.Rptr.2d 898, 882 P.2d 894].) Or, as that court would later put it, 'Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like

---

[11] In light of this conclusion, we need not address whether Comstock's allegations are within section 425.16, subdivision (e)(4), as speech related to an issue of public interest.

procedure at an early stage of the litigation. [Citation.]' (*Varian Medical Systems, Inc. v. Delfino, supra*, 35 Cal.4th at p. 192; accord, *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].)"

While Comstock's burden may not be "high," he must demonstrate that his claim is legally sufficient. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 93.) And he must show that it is supported by a sufficient prima facie showing, one made with "competent and admissible evidence." (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 [132 Cal.Rptr.2d 57]; see *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [45 Cal.Rptr.2d 624].) Comstock's demonstration does not measure up.

*The First Cause of Action for Defamation*

Comstock's first cause of action, labeled defamation, alleges oral statements by Aber, which means his claim is for slander.[12] To plead such a cause of action, Comstock must set forth "either the specific words or the substance of" the allegedly defamatory statements. (*Lipman v. Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 235 [11 Cal.Rptr. 97, 359 P.2d 465].) An allegation "of a 'provably false factual assertion . . .' . . . is indispensable to any claim for defamation." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 32 [53 Cal.Rptr.3d 752].) As Witkin distills the pleading rule, "It is sometimes said to be a requirement, and it certainly is the common practice, to plead the exact words or the picture or other defamatory matter. The chief reason appears to be that the court must determine, as a question of law, whether the defamatory matter is on its face or capable of the defamatory meaning attributed to it by the innuendo. Hence, the complaint should set the matter out verbatim, either in the body or as an attached exhibit." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 739, p. 159.)

Here, as noted, Comstock's pleading included the following:

"14. COMSTOCK is informed and believes, and thereon alleges that ABER thereafter orally published false statements about COMSTOCK to

---

[12] Civil Code section 46 provides: "Slander is a false and unprivileged publication, orally uttered . . . which:

"1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

"2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

"3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

"4. Imputes to him impotence or a want of chastity; or

"5. Which, by natural consequence, causes actual damage."

third parties, including but not limited to friends, employees of WOLTERS KLUWER, health care practitioners, and the police. These false statements included the fabricated story that COMSTOCK had sexually assaulted ABER on the night of June 5, 2010. [¶] . . . [¶]

"16. COMSTOCK is informed and believes, and thereon alleges ABER reported to a nurse at Kaiser Permanente in or around June 2010 that she had been sexually assaulted. On information and belief, COMSTOCK alleges ABER provided the nurse with COMSTOCK's name and place of employment. On information and belief, COMSTOCK alleges the nurse then told ABER the nurse must report the sexual assault to the police. On information and belief, COMSTOCK alleges the nurse then called the police and asked ABER to repeat her story to the police.

"17. COMSTOCK is informed and believes, and thereon alleges that ABER reported the allegations of sexual assault against COMSTOCK to ERIN BUSH, Human Resources, at WOLTERS KLUWER in or around late June 2010.

"18. COMSTOCK is informed and believes, and thereon alleges that ABER knew the falsity of her statements when she made them. ABER acted with malice, fraud, and oppression."

Pleading is one thing. When Aber filed the SLAPP motion, Comstock now had to show a likelihood of success on his claims, a showing he had to make with admissible evidence. This, he has failed to do.

Referring to his burden in his opening brief, for example, Comstock asserts that he met his burden in his declaration where he referred to Aber's statements as false, citing to paragraph 7 of the declaration. In that paragraph Comstock merely asserts, however conclusorily, that he "learned from Aber's deposition testimony and documents produced by Aber and Wolters Kluwer that Aber had made false statements about me to third parties, including a nurse at Kaiser Hospital, possible [*sic*] the police, Wolters Kluwer's Senior Human Resources Manager, Erin Bush, and Aber's friends and other Wolters Kluwer employees." Such assertion does not identify "either the specific words or the substance of" the allegedly defamatory statements.

■ But whatever the statements, Comstock does not specifically deny their truth, and certainly does not deny that he sexually assaulted Aber. Such

a denial—which would have been easy to make under penalty of perjury, if true—cannot be reasonably inferred from Comstock's vague statement.

It is true that Comstock's cross-complaint alleged that Aber's statements were false. But as we confirmed in *Hecimovich, supra,* 203 Cal.App.4th at p. 474, "plaintiff cannot rely on his pleading at all, even if verified, to demonstrate a probability of success on the merits."

Comstock's opening brief also cites to evidence from Aber's deposition in which she admits she made calls to certain people; he also cites to an e-mail from a third party. From this evidence Comstock asserts that Aber "must have" made defamatory comments about him. Such an inference cannot be indulged. Not legally. Not factually.

■ As to the legal, when one is relying on inferences, they must be " 'reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647 [69 Cal.Rptr.2d 296]; see *Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894 [83 Cal.Rptr.3d 146].)

As to the factual, asked at deposition about possible communications with third persons, Aber testified either that she did not tell anyone else anything specific about the incident with Comstock (just that something had happened that was work related) or that she did not remember what was discussed. Comstock does not explain how it can be reasonably inferred that merely because Aber may have had conversations with some people around the time of Comstock's claimed assault on her, they must have included defamatory statements about him.

Comstock's reply brief attempts to get more specific, asserting as follows: "Comstock has identified substantial, additional evidence that Aber likely repeated her defamatory statements to other third parties, which statements are clearly *not* protected. Specifically, Aber spoke with Mark Green, a *trusted* supervisor at Wolters Kluwer, the evening of the alleged assault. [Citation.] Aber also spoke with a friend, Nick Kavayiotidis, 19 times between 10:52 p.m. on June 5 and 7:51 a.m. on June 8, including three times the night of the alleged assault after she returned home (including two after midnight) and subsequently 12 more times on Sunday, June 6, the day after the alleged sexual assault took place. [Citations.] A few weeks after June 5, 2010, Aber told a friend, Katie Schiele, while crying, that she thought her job was in jeopardy, that there had been a merger and that 'something happened,' prompting Schiele to give Aber an attorney's telephone number. [Citations.] Comstock received an email from Jim Cioppa on August 6, 2010 stating that Aber was telling employees at Wolters Kluwer that she got Comstock fired

and that there was 'an ongoing investigation going on because of things [Comstock] did.' [Citation.] Cioppa ended his email with, 'Sorry to forward this type of message to you; however I do believe you have a right to know that [Aber] is making negative statements about your character.' [Citation.]"

We have several reactions to Comstock's position vis-à-vis Aber's friends. First, as noted, Aber's deposition was taken on March 10, 2011; Comstock was not served until May 7; his response was not due until late May, and in fact was not filed until June 3. Comstock could have taken the depositions of any of those claimed witnesses before any pleading was due. He did not. And even after Aber's anti-SLAPP motion was filed on July 8, Comstock could have sought discovery before the SLAPP motion was heard. (See § 425.16, subd. (g) [if good cause is shown, court may permit discovery after the motion to strike is filed].) In short, Comstock made no such attempt at discovery. Nor did he provide any declaration from Green (who supposedly worked with him), or from Kavayiotidis, or Schiele.

Second, and perhaps most telling, Comstock provided no declaration from Cioppa, his coworker—and codefendant. After all, it was Cioppa who could testify about the e-mail. But more importantly, Cioppa could support some of Comstock's specific allegations, including that Comstock had "fallen asleep" in the cab. He could also support the alleged communications between Aber and Cioppa, including the day after the incident and on June 7.

Comstock contends that there is no evidence in the record that Aber in fact followed up with the Kaiser nurse or the police, which shows that she did not believe her statements about the claimed assault to be true. There is nothing in the record indicating whether Aber did or did not follow up with the Kaiser nurse after their phone call. But whether she did or not, it does not support a reasonable inference that Aber believed her statement was false.

Finally, Comstock asserts that because Aber allegedly made similar statements to Bush and then sued Kluwer, a jury could reasonably conclude that her "statements were knowingly false." We fail to follow the logic.

*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 [131 Cal.Rptr.3d 171], relied on by Comstock, is inapplicable. It is true that the Court of Appeal affirmed that the defendants failed to show that the reports they filed with the police authorities were not " 'protected activity' " within the SLAPP statute. (*Id.* at p. 701.) But the reason was, as the trial court found, "that the record 'conclusively' established that Alice's and Toothman's statements to the

police were 'illegal activity' under Penal Code section 148.5, and, as such, not 'protected activity' within the meaning of the anti-SLAPP statute."[13] (199 Cal.App.4th at p. 701.)

In sum, Comstock has not submitted any admissible evidence that Aber made defamatory statements about him. But even if he had, he would still not prevail, because of the law of privilege set forth in Civil Code section 47, subdivisions (b) and (c).

### Defamatory Statements Would Be Privileged

█ Civil Code section 47, subdivision (b) provides that a privileged communication is one made "[i]n any . . . (3) . . . official proceeding authorized by law . . . ." Such privilege covers communications to the police or other government authorities reporting a crime or suspected crime. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 363–372 [7 Cal.Rptr.3d 803, 81 P.3d 244].) And it applies "even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) This privilege, the Supreme Court has said, is to be given "an expansive reach" (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]), and "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [3 Cal.Rptr.2d 49]). This privilege is absolute, and even covers false and malicious statements. (*Silberg v. Anderson, supra*, 50 Cal.3d at pp. 215–218.)

*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 [2 Cal.Rptr.3d 385], cited by Comstock in his reply brief, is not to the contrary. The plaintiff there was a token collector who sued another token collector, asserting that the defendant had told private citizens that the plaintiff had stolen a valuable item from him. The trial court denied a SLAPP motion, and the Court of Appeal

---

[13] The record included the unusual, if not unique, fact that at the time the jury returned its verdict acquitting plaintiff Jon Lefebvre of the criminal charges based on Alice's and Toothman's statements to the police, the jurors, "acting of their own volition, selected the jury foreperson to read the following statement into the record: 'We, the jury, believe that the absence of any real investigation by law enforcement is shocking and we agree that this appears to follow a rule of guilty until proven innocent. There was no credible evidence supporting the indictment. We believe prosecuting this as a crime was not only a waste of time, money, and energy, for all involved, but is an affront to our justice system. This jury recommends restitution to the defendant for costs and fees of defending himself against these charges. This jury requests that our collective statement be made available in any [future] legal action relating to these parties. . . .' The judge who presided over Jon's criminal trial granted Jon's motion for a finding of factual innocence pursuant to Penal Code section 851.8, subdivision (e)." (*Lefebvre v. Lefebvre, supra*, 199 Cal.App.4th at p. 700.)

affirmed, holding that the defendant did not demonstrate that the case was one involving an issue of public interest. The court observed that the defendant did not pursue any of the civil or criminal remedies available to him, and thus failed to demonstrate that his dispute with the plaintiff was anything other than a private dispute between private parties. The fact that the defendant allegedly was able to vilify the plaintiff in the eyes of at least some people established only that the defendant was partially successful in his campaign of vilification. It did not establish that he was acting on a matter of public interest. (*Id.* at pp. 1132, 1134.)

Civil Code section 47, subdivision (c) provides that a privileged publication is one made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

Here, Aber's report to the Kaiser nurse was to an interested person, not to mention one who was a mandated reporter. Likewise, Comstock's allegations against Aber show that Aber's report to Bush, made pursuant to her employer's policy requiring that sexual harassment be reported to its human resources personnel, was to a person interested in the communication. Thus, the reports to the Kaiser nurse and to Bush are therefore conditionally privileged under Civil Code section 47, subdivision (c), providing Aber a possible affirmative defense, one lost only if Comstock could show malice.

The law is that to defeat a SLAPP motion, Comstock must overcome substantive defenses. (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 447–448 [122 Cal.Rptr.3d 73].) And his claim would fail for his inability to show malice, as have the claims of many other plaintiffs who lost SLAPP motions because of such inability. (See *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 275 [105 Cal.Rptr.2d 674]; *Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1162 [15 Cal.Rptr.3d 100]; *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 689–690 [105 Cal.Rptr.3d 98]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226–227 [105 Cal.Rptr.3d 683] [malicious prosecution].)

### *The Second Cause of Action for Intentional Infliction of Emotional Distress*

Comstock's second cause of action for intentional infliction of emotional distress is based on the same allegations as his first cause of action. As Comstock's brief bluntly puts it, "The same false statements establish outrageous conduct by Aber to support Comstock's intentional infliction of emotional distress claim." Comstock is wrong.

A cause of action for intentional infliction of emotional distress requires several things missing here. First, the complained-of conduct must be outrageous, that is, beyond all bounds of reasonable decency. (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]; Rest.2d Torts, § 46 ["no occasion for the law to intervene in every case where some one's feelings are hurt"].) Second, the conduct must result in severe emotional distress. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58].) And third, the tort calls for intentional, or at least reckless, conduct. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 453, p. 672.) None of these is evidenced here.

The complained-of conduct here—reporting a sexual assault to the Kaiser nurse and Kluwer's HR department—is hardly "extreme and outrageous." Beyond that, Comstock has provided no evidence that he suffered any emotional distress, let alone severe distress.

*Kinnamon v. Staitman & Snyder* (1977) 66 Cal.App.3d 893 [136 Cal.Rptr. 321], disapproved in *Silberg v. Anderson, supra,* 50 Cal.3d at page 219, and *Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126 [102 Cal.Rptr.2d 679], the two cases cited by Comstock, are easily distinguishable. To begin with, both of them involved demurrers, not a setting, as here, where declarations were involved. Beyond that, the facts are hardly comparable.

Kinnamon sued a lawyer who, in an attempt to collect $250 owed on a check written on insufficient funds, sent a letter to Kinnamon threatening to file a criminal complaint. The Court of Appeal held it stated a claim: "Here the first amended complaint alleges outrageous conduct on the part of the attorney defendants acting as agents of defendant O'Cana. Rule 7-104 of the California Rules of Professional Conduct states in pertinent part: 'A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action . . . .' Thus, the conduct charged in the complaint is of such an extreme nature as to be 'outrageous.' (See Anno., Debt Collection—Emotional Distress, 46 A.L.R.3d 772, 780–781; [citations].)" (*Kinnamon v. Staitman & Snyder, supra,* 66 Cal.App.3d at p. 896.)

Conley, a Catholic priest, sued the Archdiocese, claiming it retaliated against him for conduct that was consistent with—if not mandated by—the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) The Court of Appeal held that the Archdiocese's conduct in sanctioning Conley

for complying with his mandatory duty was an " 'outrageous act.' " (*Conley v. Roman Catholic Archbishop, supra,* 85 Cal.App.4th at 1132.) Indeed.[14]

## DISPOSITION

The order striking the cross-complaint is affirmed.

Kline, P. J., and Haerle, J., concurred.

---

[14] This is how the Court of Appeal described the facts: Conley "witnessed an incident of suspected child abuse involving Father James W. Aylward, the pastor of Saint Catherine of Siena Parish Church, and a minor child. He reported the incident to church and law enforcement officials. Aylward subsequently admitted wrestling with the minor child in contravention of [the archdiocese's] rules prohibiting certain activities between the clergy and minors. As appellant alleges, respondent retaliated against him for reporting the incident by discrediting his report to law enforcement officials. Respondent relieved appellant of his duties and put him on administrative leave. Respondent falsely reported to other clergy and members of the archdiocese that appellant committed inappropriate conduct during church functions and demanded that appellant submit to a psychological evaluation. Finally, on April 5, 1998, respondent caused a letter to be published in the San Francisco Examiner in which respondent's director of communications falsely accused appellant of engaging in a witch hunt against Aylward." (*Conley v. Roman Catholic Archbishop of San Francisco, supra,* 85 Cal.App.4th at p. 1129.)