Filed 4/22/15  Corbin v. Farber CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DONNA CORBIN, | D066034 |
| Cross-complainant and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00069815-CU-OR-CTL) |
| RODOLFO FARBER et al., | |
| Cross-defendants and Appellants. | |


APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed with directions.

Daley & Heft, Lee H. Roistacher, Samuel C. Gazzo for Cross-defendants and Appellants.

Law Offices of Daniel J. Williams and Daniel J. Williams for Cross-complainant and Respondent.

Cross-defendants and appellants Rodolfo Farber, Alfredo Jaime, and Jaime Partners, Inc. appeal from an order denying their Code of Civil Procedure[1] section 425.16 special motion to strike respondent and cross-complainant Donna Corbin's cause of action for defamation based on statements made by Farber and Jaime in three e-mails. Although the trial court found appellants met their burden to show Corbin's defamation cause of action arose out of protected petitioning activities under the anti-SLAPP law, it denied the motion, ruling the cause of action was not barred by the litigation privilege of Civil Code section 47, subdivision (b) and that Corbin had established a probability of prevailing on the merits of her claim. Appellants contend the trial court erred because the litigation privilege is an absolute bar to Corbin's action, and the e-mails were not defamatory. They ask us to treat Corbin's defamation cause of action as separate claims based on each alleged defamatory statement, and to strike those portions of the claims on which Corbin fails to establish a reasonable probability of prevailing on the merits.

We conclude that while Corbin's defamation cause of action falls within the purview of the anti-SLAPP statute, she cannot demonstrate a probability of prevailing on the claim because it is barred by the litigation privilege. Accordingly, we reverse the order and direct the court to enter a new order granting appellants' motion.

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise specified. Section 425.16 is commonly referred to as the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85.)

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

Rodolfo Farber is the manager of Jie Callo, LLC (Jie Callo), which is a tenant and lessee of unit 102 (the property) in a mixed residential and commercial condominium project known as the Pacific Terrace (Pacific Terrace). In 2013, the property's owner, Constantine Coss as trustee of the Coss Family Trust (Coss), authorized Jie Callo to begin construction of tenant improvements on the property, at which Farber was planning to operate a restaurant. Farber retained Jaime Partners, Inc. as the general contractor. At that time, Corbin was the president of Pacific Terrace's board of directors and a member of its architectural committee.

In April and May 2013, Pacific Terrace sent a cease and desist letter to Coss and issued notices of violation based on Jie Callo's commencement of construction without an architectural review application and the placement of unauthorized window coverings on the unit. Coss eventually submitted an incomplete architectural review application for the restaurant's construction. In July 2013, Jai Callo recommenced construction, having been given provisional permission to do so by Coss's property manager Athena Harman and Coss's attorneys. In July and August 2014, attorneys for Coss and Pacific Terrace exchanged letters pertaining to the property. Around August 20, 2014, Jaime Partners, Inc. placed unauthorized notices on resident's cars regarding work to be done and asking

---

2    In opposition to appellants' anti-SLAPP motion, Corbin filed 14 evidentiary objections. Farber does not challenge the trial court's rulings on those matters, and thus we omit any facts as to which the court sustained Corbin's objections. We otherwise state the facts in the light most favorable to Corbin, the party opposing the anti-SLAPP motion. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

them not to park in their regular parking spaces. Pacific Terrace's property manager Sean Sutton e-mailed Harman, telling her such notices were prohibited. Days later, Jie Callo's attorney Adriana Gutierrez informed Sutton via letter that she had been authorized to file a lawsuit against him and his company for damages caused by their "consistent and . . . bad faith interference with Jie [C]allo's work of improvements and alterations" at the property. She demanded Sutton cease further actions interfering with the work and provide Jie Callo full access to the common areas, and advised him failure to do so would result in an immediate lawsuit. About this time, Corbin proposed to meet with Coss to resolve the problems occurring at the unit. Though Jie Callo continued to place unauthorized notices on residents' cars, in late August 2013, Pacific Terrace's architectural review committee approved Coss's architectural review application with some conditions.

On September 13, 2013, Farber reported via e-mail an incident that had assertedly occurred that day involving Corbin. Farber sent the first e-mail, titled "Lady traspassed [*sic*] and attacked me," to Sutton and copied it to Jaime, Coss, Harman, and attorney Gutierrez. That e-mail read: "Sean, [¶] This lady traspassed [*sic*] into the property Having [*sic*] my standard meetings with subs, literally slapped me. This is so wrong. I have never ever had that experience in my life. So I am calling the cops to put a complaint I am not allowing this anymore. I do not understand how you think this can be allowed. This is ridiculous. [¶] Adriana, please start a restraining order on her, you guys do not understand how uncomfortable I am feeling right now. I really need to press charges now. [¶] We have witness including my partner Alfredo."

4

Several minutes later, Jaime sent his own e-mail to Coss and Harman, copied to Sutton, Gutierrez and Farber.  Jaime wrote: "Athena & Constantine  [¶]  We just can [*sic*] believe this situation.  We are dealing with a very unique situation and the main reason why this project will fall down if this resident continues to trespass and assault our vendors and once we open she could be a liability for the patrons.  [¶]  So incredible sad [*sic*]."

About an hour later, Farber responded to Jaime's e-mail, directing the following to attorney Gutierrez: "Adriana,  [¶]  Need to put a restraining order or whatever is needed on her.  She will be a problem and I am really concerned now about her and everybody's safety on site.  This lady is clearly insane.  Please start process to stop her, letters, court, whatever is needed.  She needs to stay away.  [¶]  Thank you!"

Later that evening, Jaime sent an e-mail to Coss, Harmon and Farber stating it was "important we all meet next week and go over today's incident and plan for the next course of action against this person that's is [*sic*] causing damage to our project soon to be restaurant."

On October 1, 2013, Farber filed a request for a civil restraining order against Corbin.  Two days later, Coss sued Corbin for injunctive relief, trespass, nuisance, and breach of Pacific Terrace's conditions, covenants and restrictions (CC&Rs).

The following month, Corbin cross-complained against Farber, Jaime and Jaime Partners, Inc. asserting causes of action for defamation/libel per se and trespass.  In support of her defamation cause of action, Corbin alleged Farber's and Jaime's e-mails were false and libelous on their face as they charged her with the crimes of trespass,

assault and battery, and tended to injure her in her occupation as the volunteer president of Pacific Terrace's board of directors. Corbin also alleged the e-mails "expose[d] [her] to hatred, contempt, ridicule, and obloquy."

In December 2013, after considering Farber's testimony, the trial court denied Farber's request for a permanent restraining order.

Appellants thereafter filed a special motion to strike Corbin's defamation cause of action under section 425.16.[3] They argued the September 2013 e-mails were privileged communications and were acts in furtherance of their right of petition and free speech under the United States and California Constitutions, as well as statements made by and to interested parties in contemplation of threatened litigation for the purpose of providing Pacific Terrace notice of imminent litigation and demanding Corbin cease her conduct. They asserted the e-mails constituted a direct instruction to counsel to initiate an application for a civil harassment restraining order. Appellants further argued their communications were absolutely privileged under Civil Code section 47, subdivision (b), but even if they were not, Corbin could not demonstrate a likelihood of success on the merits on her claim because appellants had obtained a preliminary injunction barring Corbin from harassing, intimidating or disturbing the tenants and their subcontractors at the property.

---

3    Appellants' anti-SLAPP motion was combined with a demurrer and motion to strike damages allegations. They set the anti-SLAPP motion for hearing separately from the other motions.

Corbin opposed the motion. She argued appellants had not met their threshold burden to show the e-mails arose from protected conduct; that the e-mails were not in connection with litigation as recipients Sutton and Pacific Terrace had no interest in litigation against Corbin individually, neither was a respondent in Farber's petition for a civil harassment restraining order, and neither was a defendant in any other litigation commenced by appellants. She argued the e-mails were not protected by the litigation privilege because they were not published with a good faith belief in a legally viable claim or in serious contemplation of litigation. Specifically, Corbin argued the e-mails did not constitute a classic prelitigation demand letter because they were not written by an attorney, not addressed to Corbin, did not set forth any steps to be taken to avoid litigation, and appellants did not consult with their attorney before sending them, demonstrating they fell outside the privilege. As for the second e-mail, Corbin argued its language—"Need to put a restraining order or whatever on her"—and—"Please start process to stop her, letters, court, whatever is needed"—was a "clear indication that [the] statements had not 'ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means to obtaining access to the courts for the purpose of resolving the dispute.' "

Corbin also argued the e-mails were not privileged because they constituted a "tactical ploy" to induce the settlement of the ongoing nonlitigated dispute between Pacific Terrace and Coss relating to the restaurant's asserted noncompliance with Pacific Terrace's CC&Rs. She argued the e-mails threatened to present criminal charges to

7

obtain an advantage in the unlitigated dispute between Pacific Terrace and Coss over CC&R violations, and they had no connection or logical relation to the present action.

Finally, Corbin argued she could prove a probability of prevailing on the merits in that the e-mails on their face imputed assault, battery, trespass and insanity to Corbin, and she had evidence—via the reporter's transcript of the civil restraining order hearing—that Farber had admitted she did not slap him. Corbin presented her own declaration denying she trespassed, slapped or attempted to slap anyone, or verbally or physically threatened anyone.

The trial court denied appellants' anti-SLAPP motion. It ruled they had met their threshold burden of establishing Corbin's defamation cause of action was protected under section 425.16, subdivision (e)(2) of the anti-SLAPP statute.[4] The court, however, rejected application of the litigation privilege, finding the statement in the e-mails stating "this lady is clearly insane" did not relate to litigation under serious consideration: "No litigation was contemplated, seriously or otherwise, to have Corbin declared 'insane' or

---

[4]     The trial court found the September 2013 e-mails related to substantive issues in anticipated litigation and were directed to persons that had some interest in the anticipated litigation. Specifically, relying in part on *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, the court ruled: "The statements giving rise to [the finding that the e-mails related to substantive issues in anticipated litigation] include those related to 'start[ing] a restraining order' and Mr. Farber's statement, 'please start process to stop her, letters, court, whatever is needed.' These statements, along with the statements regarding the confrontation between Mr. Farber and Ms. Corbin, clearly relate to substantive issues in anticipated litigation." It further ruled: "Here, the e[-]mails at issue were directed to property owners, managers, attorneys, and a witness. Under *Neville*, these parties have some interest in the litigation. In sum, for the purposes of anti-SLAPP protection, the e[-]mails at issue were made in connection with anticipated litigation." Thus, the court ruled appellants had met their burden to show Corbin's defamation cause of action arose from protected activity.

8

subject her to a [Welfare and Institutions] Code [section] 5150 hold (or anything of the sort)." It then ruled Corbin had established the requisite "minimal merit" to her defamation claim: "The evidence submitted with [Corbin's] opposition suggest[s], *inter alia*, that, contrary to the representations made in the e[-]mails at issue, Ms. Corbin likely never slapped or attempted to slap Mr. Farber. . . . Mr. Farber's own testimony from the restraining order hearing indicates that, at most, Ms. Corbin raised her hand in his presence. That testimony, taken with the declarations submitted in support of [Corbin's] opposition and the contrary content of the e-mails at issue, establishes the minimal merit necessary: that the e-mails contained false statements about Ms. Corbin and that she was subsequently harmed by those statements."

DISCUSSION

I. *Section 425.16 Principles and Standard of Review*

Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute identifies four classes of conduct that come within its protection, including "any written or oral statement or writing made before a . . . judicial proceeding" or "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).) The analysis of appellants'

9

anti-SLAPP motion "involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

## II. *Appellants' Threshold Showing*

In her respondent's brief, Corbin argues that the trial court erred in its ruling on the threshold anti-SLAPP inquiry because Farber's and Jaime's September 2013 e-mails did not relate to litigation contemplated in good faith and under serious consideration at the time the e-mails were sent. She asserts that Farber later admitted in connection with his request for a civil harassment restraining order that he lacked good faith in that he had no grounds for such an order. Appellants respond that the court correctly found the e-mails constituted prelitigation statements protected by the anti-SLAPP statute: statements sent to counsel showing appellants genuinely and in good faith contemplated litigation, namely the application for a restraining order, which was actually filed two weeks later.

We review Corbin's contentions notwithstanding the absence of a cross-appeal. (Compare *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 943 [plaintiff cross-appealed from portion of order striking causes of action on grounds none of them

10

satisfied the first prong of section 425.16]; *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1285.)  Corbin's argument that appellants did not meet their threshold anti-SLAPP burden, if successful, would result in our affirming the order denying the motion.  " 'It is a general rule a respondent who has not appealed from the judgment may not urge error on appeal.  [Citation.]  A limited exception to this rule is provided by . . . section 906, which states in pertinent part:  "The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken."  "The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment." ' "  (*In re Adoption of H.R.* (2012) 205 Cal.App.4th 455, 336-337, quoting *Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 798; see *Citizens for Uniform Laws v. County of Contra Costa* (1991) 233 Cal.App.3d 1468, 1472; *Central Manufacturing Dist., Inc. v. Board of Supervisors of Los Angeles County* (1960) 176 Cal.App.2d 850, 857 [a respondent may assert a legal theory which, if found to be sound, should result in affirmance notwithstanding appellant's contention].)

Having considered Corbin's arguments, we conclude appellants met their burden as to the first anti-SLAPP prong.  Because section 425.16 is construed broadly (as is the Civil Code section 47, subdivision (b) litigation privilege), "it has been established for well over a century that a communication is absolutely immune from any tort liability if it has ' "some relation" ' to judicial proceedings."  (*Healy v. Tuscany Hills Landscape &*

11

*Recreation Corp.* (2006) 137 Cal.App.4th 1, 5, citing *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.)  In *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115, the court stated:  " '[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceedings are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' "  (See also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 944-945; *Digerati Holdings, LLC v. Young Money Entertainment LLC* (2011) 194 Cal.App.4th 873, 887-888; *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1263 [communications in anticipation of litigation are considered to be under consideration or review by a judicial body for purposes of the anti-SLAPP statute]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.)  Thus, in *Briggs*, allegedly defamatory statements made by defendants in counseling a client, who later filed a small claims action, were protected by section 425.16 as made in anticipation of litigation.  (*Briggs*, at pp. 1109-1110, 1114-1115.)  " '[A] prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement " 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' [citation]." ' "  (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1162, quoting *Digerati Holdings*, at p. 887; see also *Rohde v. Wolf*, at pp. 35-36.)  " 'Good faith' in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication."  (*Digerati*, at p. 887, citing *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.)

12

Here, "[t]here is no question that the filing of a civil harassment petition constitutes protected activity." (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966, citing *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 647.) Corbin's defamation claim is based on the statements contained in the September 2013 e-mails, beginning with Farber's e-mail containing his specific request that attorney Gutierrez begin the process of a civil restraining order proceeding, and following with Jaime and Farber's additional comments concerning Corbin's asserted behavior as well as request that counsel take legal steps on the matter. Appellants' evidence shows that the very legal proceeding proposed in the e-mails was filed about two weeks later. The statements within the e-mails concern Corbin's alleged conduct or behavior on the day in question as well as Farber and Jaime's reaction to it, the very subject of the dispute presented in that legal proceeding. On our de novo review, we conclude appellants sufficiently demonstrated that Corbin's defamation claim is based on conduct in furtherance of appellants' constitutional right of petition, protected activity under section 425.16.

We reject Corbin's various contentions that the "emotional content" of the September 2013 e-mails reveals that appellants did not contemplate litigation seriously or in good faith, and that the e-mails were not sent to interested persons. She characterizes Farber's first e-mail statements as a "knee-jerk" emotional response without pause, reflection or legal consultation. She asserts Jaime's second e-mail makes no mention of proposed legal action. She argues the third e-mail amounted to merely "heated instructions" to counsel without consultation, and she maintains all of the e-mails show the "contemplation and serious consideration of litigation" if it occurred at all, happened

13

after they were sent.  We disagree with these assertions.  We readily infer from appellants' evidence, including the fact all of Farber's and Jaime's e-mails were copied to Farber's counsel, that Farber was seriously proposing that a restraining order be sought against Corbin and that the remaining e-mails at a minimum related to Farber's proposal and Corbin's conduct.  The subsequent filing of the application for a civil restraining order is evidence that litigation was contemplated in good faith.  (See *Digerati Holdings, LLC v. Young Money Entertainment LLC*, *supra*, 194 Cal.App.4th at p. 888.)  In the context of all the evidence, appellants' e-mails cannot be interpreted as statements demonstrating only a "vague 'anticipation' " of litigation (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 33), or a "mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future . . . ."  (*Edwards*, at p. 36.)

As for Corbin's points concerning the timing of the e-mails and their recipients, we are guided by *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th 1255, in which similar contentions were rejected.  There, a lawyer sent a letter to his client's customers that accused his client's former employee of trade secret misappropriation and warned customers not to do business with him.  (*Id*. at pp. 1259-1260.)  The client filed suit four months later, and the former employee cross-complained for, *inter alia*, defamation against the client and the lawyer.  (*Id*. at p. 1260.)  The lawyer specially moved to strike the cross-complaint under section 425.16.  On appeal from the order granting the motion, the former employee argued the letter was not protected activity because it was sent more than four months before the client commenced litigation, the lawyer did not expressly

14

declare that his client was contemplating litigation seriously and in good faith, and the letter was sent to customers, who were not parties to the action. (*Id*. at p. 1262.)

The Court of Appeal held the letter was protected, pointing out it related directly to the client's misappropriation and contract claims, was directed to customers who the client could reasonably believe had an interest or were potential witnesses in the dispute, and was an attempt to stop the alleged misuse and mitigate the client's damages. (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at pp. 1267-1268.) The letter did not contain statements unrelated to the allegations forming the basis for the client's claims. (*Id*. at p. 1268.) And it did not matter that the letter was sent before litigation was filed, as long as the statements were made in anticipation of litigation contemplated in good faith and under serious consideration, standards that were met in that case. (*Ibid*.) The court rejected the notion that a four month period showed litigation was not "imminent," but rather held the evidence established the letter in fact constituted a threat of impending litigation. (*Id*. at pp. 1268-1269.) And the court pointed out the anti-SLAPP statute contains no requirement that the recipient of the statement be an actual or potential adverse party. (*Id*. at p. 1270.)[5]

---

[5]     The *Neville* court said: "We also reject Neville's argument that the Letter is not protected because it was addressed to Maxsecurity's customers, against whom Maxsecurity had no claim, rather than to Neville. Although many anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties [citations], there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1270; see also *Healy v. Tuscany Hills Landscape*

15

Here, appellants' e-mails were sent to counsel, to the property owner and his management company, and to at least one witness to the alleged incident (Jaime), persons who Farber would reasonably consider interested in the matter of Corbin's interaction with him concerning construction at the property.  As indicated, shortly thereafter, appellants filed the very civil restraining order proceeding proposed by the e-mails. Evidence that the lawsuit was filed within a reasonable time of the offending statements is an indication that litigation was contemplated in good faith.  (Compare *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 35 [statement made five years before litigation commenced was not privileged] with *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1269 [statements protected by anti-SLAPP statute when litigation was filed four months afterwards].)  We conclude the content of the e-mails themselves, the fact they were copied and addressed to counsel, and the fact appellants filed a request for a civil restraining order against Corbin two weeks after sending the e-mails, show Farber's and Jaime's statements pertained to the subject of the dispute over Corbin's behavior, they made their statements to interested parties, and the statements related to litigation that was contemplated in good faith and under serious consideration.

We reject Corbin's arguments as to what she characterizes as Farber's "admissions" that he did not honestly or sincerely form an intent to file suit when the e-mails were sent, but rather had "ulterior motives."  She points to Farber's statement to "do

---

*& Recreation Corp.*, *supra*, 137 Cal.App.4th at pp. 5-6 [letter from homeowners association to nonparty association members was petitioning activity protected by both anti-SLAPP statute and litigation privilege].)

16

whatever is needed" in his third e-mail and to Jaime's e-mail sent later in the evening on September 14, 2013, in which he stated he, Farber, Coss and Harman should meet to "plan the next course of action . . . ." Corbin points to part of Farber's testimony in the civil harassment restraining order hearing in which he responded to his counsel's question, "Can you explain how you felt? Did you feel threatened? Did you feel scared?"[6] Corbin also points to Farber's counsel's argument during the restraining order hearing that her client's application was based partly on Farber's testimony, and partly on "the way [Corbin] has used her position within the HOA . . . . " None of these so-called "admissions," all of which are vague and unspecific, change our conclusions above.

Finally, Corbin misplaces reliance on Farber's admissions that he did not perceive any attempt by Corbin to slap him, as Farber's belief in the truth of his e-mailed statements is not relevant to the good faith analysis. (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1251; *Digerati Holdings, LLC v. Young Money Entertainment LLC*, *supra*, 194 Cal.App.4th at p. 887.)

---

[6]     We fail to see anything in Farber's response to counsel's question showing he did not honestly or sincerely contemplate litigation at the time he sent his e-mails. He answered: "Well, it's a little bit of more like powerless, okay. Because by the way I was raised all my life and everything, I never had a problem with, you know, any kind of law cause or anything. So for me to have a person that's a lady that's way older than me to do that, I felt powerless because there is nothing I can do about it. I'm not going to try to respond to her or even try to chat more. So just after talking to you and my legal assistance, I felt that the only way to actually avoid that in the future and not feel that way again or the people that work for me, that was the only way to do it."

17

Having concluded appellants met their burden to show Corbin's defamation cause of action arises from protected prelitigation activity, we proceed to the second prong of the anti-SLAPP analysis.

III. *Corbin Cannot Demonstrate a Probability of Prevailing on the Merits Because The Litigation Privilege Bars Her Defamation Cause of Action*

" 'In order to establish a probability of prevailing on the claim . . . , a plaintiff responding to an anti-SLAPP motion must " 'state[ ] and substantiate[ ] a legally sufficient claim.' " [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant . . . ; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.) "In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . . ' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP." (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)

"If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a

18

probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West Realty*, *LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820, quoting *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106; see also *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)

Corbin cannot carry her burden if her defamation claim is defeated by the Civil Code section 47, subdivision (b) litigation privilege. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 323 [litigation privilege may be a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing under the anti-SLAPP law]; *Comstock v. Aber*, *supra*, 212 Cal.App.4th at p. 953 ["The law is that to defeat a SLAPP motion, [the party opposing the motion] must overcome substantive defenses"].)

"The litigation privilege embodied in Civil Code section 47, subdivision (b) serves broad goals of guaranteeing access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 324.) Given the "larger goal of access to the judicial process," the litigation privilege has been applied to some forms of unlawful litigation-related activity like perjury, for example, because doing so may advance those broad goals notwithstanding the occasional unfair result in an individual case. (*Ibid*.) The privilege is "absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' " (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1241; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 [litigation privilege applies "regardless whether the

communication was made with malice or the intent to harm. . . . Put another way, application of the privilege does not depend on the publisher's 'motives, morals, ethics or intent' "].)

" ' "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." ' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 282.) "The privilege ' "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." ' " (*Ibid.*) "However, the communication must be ' "in furtherance of the objects" ' of the proceeding, which is ' "part of the requirement that the communication be connected with, or have some logical relation to, the [proceeding], i.e., that it not be extraneous to the [proceeding]." ' [Citation.] The privilege is nevertheless broadly applied and doubts are resolved in its favor." (*Hawran*, at pp. 282-283.) Applicability of the privilege is a question of law. (*Kashian v. Harriman*, *supra*, 98 Cal.App.4th at p. 913.)

We have already concluded appellants' evidence sufficiently demonstrated that Farber's and Jaime's e-mailed statements related to proposed legal action—the later-filed application for a civil harassment restraining order—which was seriously considered and contemplated in good faith for purposes of the anti-SLAPP statute, even if that proceeding was ultimately unsuccessful. As appellants point out, two of the e-mails specifically asked attorney Gutierrez to initiate the restraining order proceedings. There is merit to appellants' contention that their September 2013 e-mails "directly pertained to

20

the subsequent restraining order action" and thus had more than just some relation to litigation contemplated in good faith.  Appellants state, "Discussing what occurred and why some action was needed to stop Corbin's conduct, the purpose of the e-mails, and everything said in them, related to the reasons for and the need to take some action to stop Corbin's conduct."  We conclude for purposes of Civil Code section 47, subdivision (b),  Farber's and Jaime's e-mailed statements were communications having some relation to an anticipated legal proceeding, which were logically related to that proposed proceeding.  This is all that is necessary to render the e-mails protected by the litigation privilege.

In rejecting application of the litigation privilege, the trial court reasoned that Farber's statement—"This lady is clearly insane"—was unrelated to seriously contemplated litigation, that is, a contemplated action to have Corbin declared insane, which took the entire cause of action outside the privilege's scope.  Appellants argue this was error; that "a court cannot dissect a communication and examine individual statements in isolation, divorcing the isolated statements from the communication's overall context and purpose which in this case was to put a stop to Corbin's conduct."  Corbin disagrees with appellants, arguing that Farber's statement that she "is clearly insane" is not reasonably relevant to the substantive issues in "any litigation mentioned, contemplated, considered or actually filed by" appellants.

We are unpersuaded by Corbin's argument and the trial court's reasoning.  The anticipated legal proceeding at issue here was an application for a civil restraining order against harassment, the subject of which necessarily pertains to the behavior and conduct

21

of the person against whom the order is sought.  The point of such a proceeding is prove that the person against whom such an order is sought has engaged in unlawful violence, a credible threat of violence, or "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose" and that the course of conduct is "such as would cause a reasonable person to suffer substantial emotional distress, and . . . actually cause[s] substantial emotional distress to the petitioner.' "  (§ 527.6, subd. (b)(3)); see *Thomas v. Quintero*, *supra*, 126 Cal.App.4th at p. 648.)  Though Corbin's sanity is not strictly at issue in such a proceeding, Farber's statement is a comment on his perception of and reaction to her behavior, which is necessarily relevant to this inquiry.  "The reasonable relevancy requirement of [Civil Code] section 47[, subdivision (b)] is analogous to the 'in connection with' standard of [Code of Civil Procedure] section 425.16, subdivision (e)(2)."  (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1266.)  Appellants' e-mailed statements meet that standard.

Thus, this matter is unlike *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140 (*Nguyen*), on which Corbin relies.  In that case, an attorney for a technology company (Proton) sent a prelitigation demand letter to another technology company (Excelsior) in part threatening to sue Excelsior for acts of unfair competition and misappropriation of trade secrets, and asserting that it and Nguyen, a former Proton employee, were illegally soliciting Proton's customers.  (*Id*. at p. 143.)  The letter then stated, falsely:  "We think you should be aware that [Nguyen] was working for Proton under a work furlough program sponsored by the Santa Clara County Probation

22

Department. [Nguyen] was in prison for repeatedly and violently assaulting his wife.' " (*Id.* at pp. 143-144.)

Nguyen sued Proton and its counsel for, among other claims, libel and slander based on the demand letter's statements. (*Nguyen*, *supra*, 69 Cal.App.4th at p. 145.) On appeal from a summary judgment in Proton's favor, the *Nguyen* court reversed, stating it had "no difficulty in holding that the inclusion in [the] demand letter to Excelsior of references to appellant's criminal record falls outside of the [Civil Code] section 47 [, subdivision] (b) privilege." (*Id.* at p. 151.) The court relied on the principle of *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, that " '[a] statement . . . made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action.' " (*Nguyen*, at pp. 146-147.) It explained: "[W]e think any 'connection' between such a conviction and the *civil unfair competition focus of Horton's demand letter* is, to be charitable about it, tenuous. Respondents attempt to 'connect' the statements regarding appellant's criminal record with the dispute by arguing that the former 'may have persuaded Excelsior that [appellant] was more than capable of committing unfair business practices since he had been convicted of more serious crimes in the past.' This contention borders on the specious. First, the 'unfair business practices' of which Proton and its attorneys complained in their March 29 letter are not 'crimes.' Second, one's proclivity to engage in such practices is in no way, shape or form predictable by whether he (a) beats his wife (b) shoots at unoccupied cars, or (c) commits vandalism." (*Ibid.*, italics added.) The court pointed out that courts have declined to

23

apply the litigation privilege when an attorney threatens or misrepresents the existence of criminal proceedings.  (*Id*. at p. 152.)

Thus, in *Nguyen*, *supra*, 69 Cal.App.4th 140, the court found no relevance to the mention of a party's criminal history in connection with a civil unfair business practices lawsuit.  This case, unlike *Nguyen*, involves an anticipated civil restraining order against an allegedly harassing course of conduct, and thus Farber's reference to Corbin being "clearly insane" was not so irrelevant or attenuated to *that* proposed proceeding to take Farber's e-mail, which also asked his counsel to commence those proceedings, outside of the litigation privilege.  Farber's ultimate lack of success in that matter, or his motives and intentions in making his statement, have no bearing on whether the litigation privilege applies.[7]  Our conclusion is in keeping with the settled principle that the privilege is to be construed broadly, and that doubts must be resolved in favor of applying it.  (*Hawran v. Hixson*, *supra*, 209 Cal.App.4th at p. 283; *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294; *Wang v. Heck* (2012) 203 Cal.App.4th 677, 684.)  "Although 'the litigation privilege has its costs, " '[i]t is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner,

---

[7]     We observe that in arguing against applying the privilege, Corbin repeats her arguments that appellants' e-mails were not a sincere and good faith proposal of legal action, but rather a negotiating tactic in the larger dispute with Pacific Terrace.  In making this argument, she points out that while Farber threatened to call police, he did not.  But Farber's statement, "I am calling the cops to put a complaint," is not a threat of criminal prosecution or a representation about the existence of criminal proceedings.  In any event, such a remark is not an injurious defamatory statement.

24

but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' " ' " (*Wang v. Heck*, at pp. 686-687.)

Because the litigation privilege bars Corbin's defamation claim as a matter of law, she cannot demonstrate a probability of prevailing on the merits of that cause of action.

DISPOSITION

The order is reversed and the matter remanded with directions that the superior court enter a new order granting appellants' Code of Civil Procedure section 425.16 special motion to strike. Appellants are awarded costs on appeal. Their entitlement, if any, under section 425.16 to reasonable attorney fees and costs incurred on the motion in the trial court and on appeal shall be determined by the superior court on remand. (*Kenne v. Stennis*, *supra*, 230 Cal.App.4th at p. 974; *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 766-767.)


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.

25